JANE T. TURLEY, Respondent, v. SOPHIA EDWARDS ET AL, Appellants.

Kansas City Court of Appeals, July 6, 1885.

1. PRACTICE—BILL OF EXCEPTIONS—EVIDENCE—PRESUMPTION AS TO SUSTAINING AVERMENTS.—Where none of the evidence at the hearing was preserved in the bill of exceptions, it is to be presumed that the proofs amply sustained the allegations of the bill, and that every fact, within the terms of the averments, essential to maintain the decree, was fully established.

2. CONTRACTS—CONSIDERATION CONTRARY TO PUBLIC POLICY—RULES OF LAW APPLICABLE TO.—Whenever any contract conflicts with the

morals of the time, and contravenes any established interest of society, it is void, as being against public policy; and if one knowingly, and without compulsion, enters into such transaction, he is *particeps criminis*, and cannot complain; and in such case the maxim applies, *in pari delicto potior est conditio defendentis et possidentis*. Nor could he have affirmative relief in equity, because of that other principle of policy, *ex dolo malo non oritur actio*. But if not *in pari delicto*, and if consent be obtained under duress, these maxims will not be applicable to the transaction.

3. ——— CONSENT—DURESS PER MINAS—WHAT CONSTITUTES.—At common law duress *per minas* was limited to mere physical injury— fear of loss of life or limb ; fear of *mayhem* and personal imprisonment. But the better doctrine now is, "that regard must be had to the age, sex and condition of the parties ;" and "any contract produced by actual intimidation ought to be held void, whether, as arising from a result of mere personal infirmity, or from circumstances which might produce a like effect upon persons of ordinary firmness." *Citing and approving, Jordan v. Elliott* (22 American Law Register 188, supreme court Pennsylvania). "The consent that binds must be voluntary." *Davis v. Luster*, 64 Mo. 43 ; Parsons on Cont., Vol. 1, p. 395,

ON RE-HEARING, October 26, 1885.

4. PLEADING—REQUIREMENTS OF CODE—SUBSTANTIVE FACTS NECESSARY TO BE, BUT NOT IN EVIDENCE.—Under our system of pleading, the facts constituting the cause of action, or matters in defence, are required to be stated. The relief to which the party is entitled—*the effect* of the matters set up—is determined by the court, as a matter of law, from the facts pleaded. Neither evidence nor conclusions of law are to be stated. *Kerr v. Simmons*, 82 Mo. 275.

APPEAL from Cooper Circuit Court, HON. E. L. EDWARDS, J.

*Affirmed.*

The facts are stated in the opinion.

JOHN R. WALKER, with DRAFFEN & WILLIAMS, for the appellants.

I. If, as respondent alleges in her petition, the consideration for the notes and deed of trust was the suppression of a criminal prosecution, and the contract, into which she voluntarily entered, was opposed to public policy, then she is in no condition to ask affirmative relief from a court of equity. In such cases courts of

equity uniformly refuse to interfere. They will not aid the one party to enforce, nor the other to cancel such a contract. *Davis v. Luster*, 64 Mo. 43 ; *Kitchen v. Greenabaum*, 61 Mo. 110 ; *Compton v. Bunker Hill Bank*, 96 Ill. 301 ; *Swartzer v. Gillett*, 2 Pinney (Wis.) 238 ; *Allison v. Hess*, 28 Iowa 389 ; *Roll v. Raguet*, 4 Ohio 400 ; *Haynes v. Rudd*, 83 N. Y. 251 ; Jones on Mortgages, second edition, vol. 1, sect. 619 ; Pomeroy Eq. Jur., vol. 1, sect. 402 ; *Hamilton v. Scull's Adm'r*, 25 Mo. 165 ; *Bartle v. Nutt*, 4 Peters (U. S.) 184 ; *Irwin v. Wells*, 1 Mo. 9.

II.   There was no duress in this case. A threat of lawful prosecution does not constitute duress. *Davis v. Luster*, 64 Mo. 43. The petition in this case shows that respondent's son had been indicted for perjury, and was a fugitive from justice, and the petition does not allege that he was innocent of the crime, and hence, as said by our supreme court in *Davis v. Luster, supra*, this is simply a case where a party has purchased immunity for her son from lawful prosecution.

III.   The petition in this case shows that Edwards had been compelled to make payments by reason of the forfeiture of Turley's bond. It certainly is inequitable to set aside the deed of trust and cancel the notes in any event, without requiring the plaintiff to do equity. She should refund what he expended.

IV.   ON MOTION FOR RE-HEARING :—There is no *express* allegation that plaintiff entered into the transaction against her will and by compulsion. Every fact which the plaintiff must prove to maintain his suit is *constitutive*, and must be alleged. *Pier et al. v. Heinrichoffen*, 52 Mo. 333. Neither are they necessarily *implied* from any of the averments in the petition.

V.   In cases involving moral turpitude no inquiry will be made into the relative guilt of the contending parties. *Kitchen v. Greenabaum*, 61 Mo. 110.

VI.   Does not this suit involve the title to real estate ? See *Dunn v. Miller*, St. Louis Court of Appeals—unpublished.

COSGROVE, JOHNSTON & PIGOTT, for the respondent.

I. The petition in this case alleges, in clear and un-mistakable language, that the plaintiff was induced to execute the notes and deed of trust which she seeks to have canceled, by the *threats* of the defendant, O. D. Edwards ; that unless she did execute said notes and deed of trust, he would have her son arrested and prosecuted for crime, etc.; that she *feared* he would carry his said threats into execution, and to prevent this, she complied with his demands. Plaintiff, therefore, *did not act in free exercise of her will.* She owed the defendants noth-ing and would have promised them nothing, but for the *threats* of the prosecution of her son.

II. " Whatever destroys free agency and constrains a person to do what is against his will, and what he would not do, if left to himself, is undue influence, whether the control be exercised by physical force, threats, importunity, or any other species of physical or mental coercion." *Earle v. Norfolk & New Brunswick Hosiery Co.,* 36 N. J. Eq. Rep. ; 16 Cent. Law Journal 218 ; *Eadie v. Slimmon,* 26 N. Y. 9.

III. It is well settled that a contract made to relieve a husband, or wife, or parent, or child from duress, or under threats of his or her prosecution for a crime, may be avoided. *Harris v. Carmody,* 131 Mass. 51 ; *Preed v. McKee,* 42 Iowa 689 ; *Jordan v. Elliott* (s. c. Pa.) 22 Am. Law Reg. N. S. 180 ; *First National Bank Nevada v. Bryon,* 62 Iowa 42 ; *Coffman v. Lookout Bank,* 5 Lea. Tenn. 232 ; *Eadie v. Slimmon,* 26 N. Y. 9 ; *Seear v. Cohen,* Eng. High Ct. Q. B. Div., November 10, 1881 ; 14 Cent. Law Journal 96 ; *Williams v. Bayley,* 14 L. T. Rep. (N. S.) 802 ; 41 Am. Rep. (note) 190.

III. " Where both parties are *in delicto,* concurring in an illegal act, it does not always follow that they stand *in pari delicto ;* for there may be, and often are, very different degrees in their guilt. One party may act under circumstances of oppression, imposition, hardship, undue influence, or great inequality of age or condition, so that his guilt may be far less in degree than that of his associate in the offence." Story's Eq. Jur.

(12th Ed.) section 298, and note, and following sections; Waterman on Spec. Perf. Cont., section 210. And the general rule, leaving the parties without remedy, is not applicable when the contract is prohibited for the mere protection of one of the parties against an undue advantage which the other party is supposed to possess over him. *Deming v. State* (23 Ind. 416); *Scotten v. State* (51 Ind. 52); Waterman on Spec. Perf. Cont., section 210 and note 2. It is no offence for a mother to conceal her son after the commission of a felony by him, or give him any other aid, in order that he may escape or avoid arrest, trial, conviction or punishment. Revised Statutes, section 1650; *Kitchen v. Greenabaum*, 61 Mo. 110.

IV. In every one of the cases cited by appellant's counsel the parties *were upon an equal footing*—there was no "fraud, oppression, imposition, or hardship, practiced by one party upon the other, thereby obtaining an unconscionable advantage," as in the case at bar. *Kitchen v. Greenabaum, supra*; Jones on Mortgages (2nd Ed.) Vol. 1, section 619; *Haynes v. Rudd*, 83 N. Y. 251.

V. The petition clearly charges that plaintiff, because of the threats of defendants, and against her will, signed the notes and deed of trust.

Opinion by PHILIPS, P. J.

This is an action to enjoin the collection of certain notes and the enforcement of a deed of trust, executed as security for said notes, and to have the same canceled. The material averments of the petition are: That at the time plaintiff, who was and is a widow, signed said notes and executed said deed of trust, there was pending in the circuit court of Cooper county an indictment against her son, F. M. Turley, for the crime of perjury, who then was a fugitive from justice. The defendant, O. D. Edwards, claiming that he had paid out large sums of money as bondsman for said son, said bond having been forfeited, "he asked and demanded of the plaintiff that she should sign said notes and execute a deed of trust upon her land above described, which was her home, and all

she had, to secure the same ; *that upon her refusal to comply with his demands*, and to sign said notes, and make said deed of trust, the said defendant, O. D. Edwards, told plaintiff *that he had learned the whereabouts of her said son, and that unless she would sign said notes and execute a deed of trust upon her said land to secure the same, he would have him arrested and brought back to Cooper county for trial, and would have him prosecuted for the crime of perjury, with which he stood charged;* but that if she would sign said notes, and give said deed of trust as he wished and requested her to do, he would not have her said son arrested and prosecuted upon the charge aforesaid, and would not inform the officers of the law of his whereabouts ; that *plaintiff fearing that the said O. D. Edwards would carry out his said threats to have her son arrested and prosecuted as aforesaid*, and relying upon his promise that he would not have him arrested and prosecuted upon said charge of perjury, and that he would not inform the officers of the law of the whereabouts of her said son, and in consideration of this said promise only, did sign her name to said notes, which were by the direction of the said O. D. Edwards made payable to his wife, the said defendant, Sophia Edwards, and execute and deliver said deed of trust to secure the same."

It is further alleged in said petition that at the time plaintiff signed said notes and executed said deed of trust, as aforesaid, she was not indebted to either O. D. Edwards or his wife, Sophia Edwards, in any sum or on any account whatever, and that no consideration of any character or description, other than is above mentioned, passed from them to plaintiff. On issue joined by defendants the court found for the plaintiff, and made decree as prayed. After motion in arrest of judgment, the defendants have brought the case here on appeal.

The single question, therefore, presented by this appeal is, does the petition state facts sufficient to entitle the plaintiff to relief? None of the evidence at the hearing was preserved in the bill of exceptions. It is to be presumed that the proofs amply sustained the allegations

of the bill, and that every fact, within the terms of the averments, essential to maintain the decree, was fully established.

1. The contention of defendant's counsel is, that it is apparent on the face of the petition that the consideration of the notes and deed of trust was immoral and contrary to public policy; and, therefore, neither the courts of law nor equity will grant affirmative relief to either party, but will leave them where their mutual wrong has placed them.

That a compact of this character is immoral, and opposed to the well being of society, as tending to obstruct the due administration of justice, is recognized by all courts. "Whenever any contract conflicts with the morals of the time, and contravenes any established interest of society, it is void as being against public policy." 1 Story on Const., section 675; *Davis v. Luster*, 64 Mo. 43; *The Cheltenham Fire B. Co. v. Cook*, 44 Mo. 30; *Swartzer v. Gillett*, 2 Bin. (Wis.) 238; *Bartle v. Nutt*, 4 Pet. 184; 1 Jones on Mort. section 619. It is further to be conceded to appellants that, if the plaintiff, knowingly, and without compulsion, entered into this transaction, she is *particeps criminis* with the defendants; and in such case the maxim applies: *In pari delicto potior est, conditio defendentis et possidentis.* She would have no standing in a court of equity for affirmative relief, because of that other principle of policy: *ex dolo malo non oritur actio. Allison v. Hess,* 28 Iowa 388; *Compton v. Bunker Hill Bank*, 96 Ill. 301; 1 Story Eq. 298.

Unless, therefore, the plaintiff's cause can be made to depend on the fact that she is not *in pari delicto* with defendants, her prayer for relief should be denied.

2. The plaintiff insists that the notes and deed of trust were obtained from her under duress. If so the law will nullify the act, for the very essence of a contract is the free consent of both parties. "The consent that binds must be voluntary." *Davis v. Luster, supra.* What amounts to duress, such as would avoid an executory contract like this, is a little

difficult of an arbitrary definition. In the very necessities of the law, in striving for exact and equal justice, it must possess. flexibility enough to meet the varying facts and circumstances of each case as it arises. Blackstone divided duress into two classes, duress *per minas* and duress of imprisonment. Duress *per. minas* was limited to mere physical injury—fear of loss of life or limb, fear of mayhem and personal imprisonment. Among a rude and heroic people, where a man's limbs and life were esteemed valuable rather on account of the service he might render his liege lord, or the sovereign, than any regard for his personal rights, it was accorded to him to avoid a deed extorted "through fear of death or mayhem," or "of imprisonment where a man actually loses his liberty." A rugged sort of courage being the inspiration of government, the fear which would avoid a deed on account of a threat must be such as would overcome "the mind of a firm and courageous man. *Metus non vani hominis, sed qui in homine constantissimo cadat.*"

We quote with unqualified approval, the language of Gorden, J., in *Jordar v. Elliott,* Supreme Court, Pennsylvania, 22 American Law Register, 188:

"But fortunately for the weak and timid, courts are no longer governed by this harsh and inequitable doctrine, which seems to have considered only a very vigorous and athletic manhood, overlooking entirely women and men of weak nerves. Pothier regards this rule as too rigid, and approves the better doctrine, that regard must be had to the age, sex, and condition of the parties. Since the fear which would be insufficient to influence the man in the prime of life and of military character, might be deemed sufficient to avoid the contract of a woman or man in the decline of life. And we think the opinion of Mr. Evans expresses the doctrine which is now approved by the judicial mind, both of this country and England, that is, that any contract produced by actual intimidation ought to be held void, whether, as arising from a result of merely personal infirmity, or from circumstances which might produce a like effect upon persons of ordinary firmness."

He cites the case of *Williams v. Bayley* ( Law R. I. H. L. case 200 ), where a son had obtained money from a bank on forged endorsements. The father, under the pressure of the situation, was induced to mortgage his property to save the son. Lord Westbury placed its invalidity on two grounds : (1) The defendant in the execution thereof was not a free and voluntary agent. (2) The contract was illegal. In the opinion he says :

" The only motive to induce him to adopt the debt was the hope that by so doing he would relieve his son from the inevitable consequences of his crime. The question, therefore, my lords, is, whether a father appealed to under such circumstances, with the knowledge that unless he does so, his son will be exposed to a criminal prosecution, with the certainty of a conviction, can be regarded as a free and voluntary agent. I have no hesitation in saying that no man is safe, or ought to be safe, who takes a security for the debt of a felon, from the father of a felon, under such circumstances. A contract to give security for the debt of another, which is a contract without consideration, is above all things a contract which should be based upon the free and voluntary agency of the individual who enters into it. But it is clear that the power of considering whether he ought to do it or not, whether it is prudent to do it or not, is altogether taken away from a father when he is brought into the situation of either refusing and leaving his son in that perilous condition, or of taking on himself the amount of that civil obligation. I have, therefore, my lords, in that view of the case, no difficulty in saying, that so far as my opinion is concerned, the security given for the debt of the son by the father, under such circumstances, was not the security of a man who acted with that freedom and power of deliberation that must undoubtedly be considered as necessary to validate a transaction of such a description."

So Parsons on Contracts ( vol. 1, p. 395, 7th edition ), after stating the common law definition of duress, says : " These distinctions would not now probably have a controlling power in this country ; but where the threat,

whether of mischief to the person or the property, or to the good name, was of sufficient importance to destroy the threatened party's freedom, the law would not enforce any contract which he might be induced by such means to make. And where there has been no actual contract, but money has been extorted by duress, under circumstances which give to the transaction the character of a payment by compulsion, it may be recovered back."

An attentive examination of modern adjudications will satisfy any one of the extension of the doctrine of duress, more commensurate with the demands of a constantly broadening and enlightening civilization.

In *Pinckston v. Brown* (3 Jones Eq. N. C. 494), a son had imposed upon the credulity and confidence of a dependent mother and influenced her to make a deed of mortgage in fraud of the rights of her creditors. She brought a bill to set aside this conveyance. The court held that while she was *in delicto* she was not truly *in pari delicto*, but was rather *in vinculis*—the slave of the son, and granted her petition.

Few living judges have well earned a higher reputation in the administration of equity jurisprudence than Judge Cooper, of the supreme court of Tennessee. In *Coffman v. Lookout Bank* (5 Lea. 232), he granted affirmative relief to a father who had been unduly influenced to execute notes to the defendant bank to prevent a prosecution of his son for forgery, and the consequent scandal to his family.

The decision is placed on the authority of the following text from Story Eq. Jur., sect. 251: "Cases of surprise, and sudden action without due deliberation, may be referred to the head of fraud or imposition. An undue advantage is taken of the party under circumstances which mislead, confuse, or disturb the just result of his judgment, and thus expose him to be the victim of the artful, the importunate, and the cunning. * * * If proper time is not allowed the party, and he acts improvidently, if he is importunately pressed—if he is not fully aware of the consequences, but is suddenly drawn into the act, if he is not permitted to consult disinterested friends

or counsel before he is called on to act, in circumstances of sudden emergency, or unexpected right or acquisition; in these and many like cases, if there has been great inequality in the bargain, courts of equity will assist the party, upon the ground of fraud, imposition, or unconscionable advantage."

While the learned judge placed much stress upon the fact that in the interview which led to the execution of the notes, one of the directors of the bank who was present, was also a lawyer, yet he says: "If the parties were not on equal terms, and one of them, from ignorance, agitation, or undue importunity, is unable to protect himself, equity will protect him. A father, overwhelmed by the information that his eldest son had been guilty of forgery, upon the spur of the moment, and doubtless in the vain hope on his part of saving the family honor, executes a note for a larger sum of money than his entire estate would bring at forced sale."

Story (section 239), also says: "Cases of an analogous nature may easily be put, where the party is subjected to undue influence, although in other respects of competent understanding. As, where he does an act, or makes a contract, when he is under duress, or the influence of extreme terror, or of threats, or of apprehension short of duress. For, in cases of this sort, he has no free will, but stands *in vinculis*. And the constant rule in equity is, that, where a party is not a free agent, and is not equal to protecting himself, the court will protect him."

In *Harris v. Carmody* (131 Mass. 51), this question is met and determined. A son had executed notes, on which his father's name had been endorsed without authority. The father was induced to execute a mortgage in liquidation. In an action for the enforcement of the mortgage the father interposed in avoidance the plea of duress, "that he was induced to execute it by threats of the prosecution and imprisonment of his son." Judge Morton, who wrote the opinion, reviews the authorities, and very justly maintains that a threat made to the father of imprisonment of the son comes as clearly within

the rule of duress of imprisonment as if made to imprison the father himself.

He says: "The substantial reasons for the exception apply as strongly to the case of a parent and his child as to that of a husband and wife. No more powerful and constraining force can be brought to bear upon a man, to overcome his will and extort from him an obligation, than threats of great injury to a child. Both upon reason and authority, we are of opinion that a parent may avoid his obligation by duress of his child."

As further illustrative of the progress of law and the expansion of the doctrine of duress, the supreme court of Minnesota, in *Tapley v. Tapley et al.* (10 Minn. 448), apply it to the instance of a husband inducing his wife to execute a conveyance of her separate property on a threat of separation from her. The court say: "It was clearly a threatened injury to her good name, which is duress within the rule laid down by Parsons."

In *Earl v. Norfolk & N. B. H. Co.* (36 N. J. Ed. 192), Van Fleet, V. C., says: "Whatever destroys free agency and constrains the person whose act is brought in judgment to do what is against his will, and what he would not have done if left to himself, is undue influence, whether the control be exercised by physical force, threats, importunity, or any other species of mental or physical coercion."

In the case at bar we have the admitted facts that the plaintiff, a widow, possessed of a small homestead, without the aid of counsel, is approached by the defendant, O. D. Edwards, and asked to secure him as bail for her son. She declines to comply with this request, which shows that the notes, etc., were not given for the sole purpose of protecting him, and that her mind was influenced by no such consideration of justice to defendant. Recognizing a mother's salient point—her weakness, if so pleased to call it—the defendant thereupon told her he had discovered the covert of her child, and if she did not comply with his demand he would bring him to trial and prosecute him for a felony. Under the impulse of this threat, and the fear of its execution, she yielded,

and mortgaged her home. Edwards, as if scheming to circumvent her, and as evidence of the supreme control he had thus acquired over her, had the notes and deed of trust made to his wife, and the notes drawn as negotiable instruments. It would be difficult for any mind to conceive of a more powerful instrumentality, by which to coerce the action and overpower the free agency of a mother than a threat to destroy her child—to degrade him and his family. When the old Prophet Isaiah sought to convey some conception of the intensity of the love which Christ bore to the Church, he could find nothing in nature so apt as the love a mother bears her child : "Can a woman forget her sucking child, that she should not have compassion on the son of her womb?" It was but the utterance of the universal sentiment of the human heart.

It is true the law rests not on sentiment or emotion, but it reaches toward perfection just in proportion as it ceases to be "the two-edged sword of craft and oppression," and becomes "the staff of honesty and the shield of innocence."

It would be a just reproach to our jurisprudence and ministers of justice to hold, that to be duress—destroying free agency—which threatens mere physical injury, while that which touches and threatens to trample upon the nobler passion of love, of family pride and honor, involving the ruin of a mother's child, is not a more overwhelming influence.

The case of *Davis v. Luster* (64 Mo. *supra*), is not parallel. There may be some observations in that case by the learned judge who wrote the opinion in seeming conflict with some enunciations of other courts cited, but, as applied to the facts of the case under consideration, there is no contradiction in law. As applied to the allegations of the petition, admitted to be true, and considering the relation between mother and child, the "circumstances of oppression or imposition" do clearly appear in this case.

The plaintiff refused to execute the notes and deed of trust until Edwards threatened her with duress of

imprisonment of her son, and she yielded to his demands through fear of the execution of this threat. She is not *in pari delicto* with the defendants, which brings her claim for relief within the rule laid down by Story, and the cases cited. The allegations of the petition were broad enough to let in comprehensive proofs of the circumstances of imposition and undue advantage, and we are bound to presume in favor of the decree that the evidence well supported the conclusion.

The judgment of the circuit court is, therefore, affirmed. All concur.

## ON MOTION FOR RE-HEARING.

Opinion by PHILIPS, P. J.

A motion for re-hearing is pressed in this case by appellants chiefly on the ground that the allegations of the petition are insufficient to have authorized the admission of the evidence essential to make out a case of duress. In other words, the contention is that the petition should have averred in express terms, that by reason of the threats of O. D. Edwards, the free will and agency of Mrs. Turley were overcome, etc.

7. It is true that under our code of practice the facts are constitutive of the cause of action, and no evidence of facts not pleaded is admissible. But it is also true that only the substantive facts are necessary to be pleaded. Neither conclusions of law nor matters of evidence are required or permitted. As I had occasion to say in *Kerr v. Simmons* (82 Mo. 275): "Under our system of pleading the facts constituting the cause of action, or matter in defence, are required to be stated. The relief to which the party is entitled, *the effect* of the matters set up, is determined by the court as a matter of law from the facts pleaded. Neither evidence nor conclusions of law are to be stated—the practice act was to make all pleadings special, to abolish general averments

stating conclusions of law in a declaration or answer. It was meant that the pleadings should be a statement of the case on both sides, not of the evidence, but of the facts to which the law is applicable. The allegation controverted must be the statement of a fact; hence, in making an issue he has nothing to do with legal conclusions. The code itself provides, that "the court may grant any relief consistent with the case, made and embraced within the issue."

The substantive facts alleged in the petition are, that the plaintiff is a mother, that her son stood charged with the crime of perjury, and was at liberty, for he was a fugitive from justice; that said Edwards, who stood as bail for her son, demanded of her the note and deed of trust as an indemnity against liability of such bailor; that she refused to accede to this request, whereat he threatened her with the arrest and punishment of her child; then, and not until then, did she, through fear of the execution of this threat, yield to his importunities, and make the note and deed.

The opinion holds that such a threat, made under such circumstances, was well calculated to excite a mother's fears, and if it did that, and under its influence alone she was led into the compact, that is a fact from which the jury might infer duress. Under such an allegation of the substantive fact of the threat, and the existence of the fear, it was perfectly competent on the trial to institute inquiry as to the extent and degree of the fear—the physical facts—so as to enable the jury to determine its probable mental effect, and whether it in fact caused the making of the compact. The law of the case would be that such a threat, followed by fear of its execution, would constitute duress of imprisonment, if the jury believed from the facts and circumstances that the mother was thereby so put in fear as to not act "with that freedom and power of deliberation that must undoubtedly be considered as necessary to validate a transaction of such a description." *Williams v. Bailey, supra.* One of the

chief grounds of the competency of evidence "is the known and experienced connection between collateral facts and circumstances, satisfactorily proved, and the fact in controversy." 1 Greenl. Ev., sects. 2, 18.

The evidence adduced at the trial, not being preserved in the bill of exceptions, the intendment of law is, that every fact " consistent with the case made and embraced within the issues " was produced and found.

The case of *Feller v. Green* (26 Mich. 70 ), cited by appellants, is no support for their position. The defendant there, although arrested on an unfounded charge of bigamy, was permitted to go at large, and did take counsel of an attorney, and was advised that he was in no danger. There was also evidence tending to show that the note was given in settlement of an existing indebtedness independent of the subject matter of the arrest. As there was a verdict for the plaintiff, in favor of the validity of the note, the supreme court simply refused to reverse it, as in its opinion, the facts so found were not sufficient to enable the appellate court to say as a matter of law that a case of duress had been made out. But the learned judge, who delivered the opinion, very significantly observed, that had the trial court found in favor of the question of duress, there were, perhaps, facts sufficient appearing to have upheld the finding; "but we cannot draw such conclusion for him, unless it is so entirely inevitable as in fact to become a conclusion of law."

In the case under review the facts pleaded are entirely different. The threat of prosecution was made unless the note, etc., were given. Under fear of the execution of such threat the mother yielded, and the verdict was in her favor. As the averments contained the strong elements of coercion, we will not disturb the verdict.

A re-examination of the authorities and the sound reason of the law has but confirmed us in the correctness of the opinion. The tendency of modern adjudication is in that direction. In a recent case decided by the su-

preme court of Rhode Island (*Foley v. Green*), it is held that "when a son had been guilty of embezzlement, and his mother made a note and executed a mortgage to the employer from whom he had embezzled, and the court was satisfied that the mother's controlling motive was to protect her son from exposure and prosecution, that she was not a free agent, and that the note and mortgage should be annulled and canceled. The maxim *in pari delicto est conditio defendentis*, does not apply." See Vol. 21, No. 9, Central L. J., page 175, and authorities cited. We are unwilling that the law, which is among the noblest of sciences, shall stand still in the march of civilization while all its fellows advance.

2. Counsel urges upon our attention the case of *Kitchen v. Greenabaum* (61 Mo. 110). We had not overlooked this case. Its history and facts are quite familiar to us. It is not this case. It is not parallel in its facts or the law applicable to this. There was no question of duress involved. The party seeking the aid of a court of equity had himself *voluntarily* engaged in a transaction forbidden and outlawed by both the organic and statute law of the state. He could have no standing before the chancellor in the forum of conscience, because he could not open his mouth without admitting that he had, without coercion, violated a penal statute. The language, *arguendo*, of Judge Sherwood, that in a transaction involving moral turpitude no inquiry will be made into the relative guilt of the contending parties, announces a correct principle; because among participants in a public offence there can be no apportionment of accountability. But it in no degree subverts or impinges upon the other rule, that there can be no binding contract where the mere physical act of concurrence therein has been coerced through duress of imprisonment.

3. It is finally insisted, in support of this motion, that this court has no jurisdiction over the subject matter of this action, as it involves the title to real estate. Had counsel made this discovery before they took the chances

of a favorable decision by this court we might have more faith in the candor of the suggestion. We do not perceive how the title to the mortgaged property is involved in this controversy. In making the deed of trust the plaintiff asserted and confessed that she had the title to convey, and the defendants—the *cestuis que trust*—in defending and asserting the validity of the mortgage, affirm their own while admitting the plaintiff's interest. There is, therefore, no issue involving the title to real estate. It is not remotely, much less directly, involved. The motion for re-hearing is denied. All concur.