———o———

A. SUMNER, Plaintiff in Error, *vs.* GEORGE W. AND C. L. SUMMERS, Defendants in Error.

1. *Contracts—Illegality—Void.*—A contract is void, when the consideration is illegal, in whole or in part, and it is immaterial, whether the contract disclosed such illegality, or it be established *aliunde.*

2. *Notes and bills of exchange—Criminal prosecution, dismissal of—Indebtedness.*— A note given to secure the dismissal of a criminal prosecution for embezzlement, whether the agreement be express or implied, is void, although it is made for the amount of money alleged to have been embezzled.

*Error to Montgomery Circuit Court.*

*Fagg & Dyer,* for Plaintiff in Error.

I. The note was for the exact amount of the defendant's indebtedness to the plaintiff at the time it was given. The

plaintiff could secure this indebtedness without compounding a felony—and it is not compounding a felony to dismiss a prosecution, unless paid or agreed to be paid therefor.

II. In the authorities cited by defendants, a careful examin. ation of them will show that they are not in point, nor in. anywise analogous to this. In the 'case referred to in 44 Mo., 29, it will be seen, that a bond was given, in the body of which is expressed the fact of the embezzlement itself; and it was clearly shown, that the bond was given for no exact amount, nor did the parties know (as plaintiff did in this) the amount of the indebtedness. It was given to procure the release of Cook from a criminal prosecution, and not for money at that time ascertained and acknowledged to be due and owing, as in this case.

*Saunders & Carkener*, for Defendants in Error.

I. The compromise of a criminal prosecution is an illegal consideration, and a promise based upon it is void. (Cheltenham Co. vs. Cook, 44 Mo., 29 ; Featherston vs. Hutchinson, 1 Cro. Eliz., 199 ; Waite vs. Jones, 1 Bing., [N. C.] 656 ; Shackell vs. Rosier, 2 Bing., [N. C.] 634 ; Howden vs. Haight, 11 Ad. & El., 1033.)

II. If a part of the consideration was an agreement, either express or implied, to dismiss or suppress a prosecution for embezzlement then pending, such agreement taints the entire transaction, and renders the deed void *in toto*. (Vide Authorities cited *supra*, and 9 Ad. & El., 371 ; Clark vs. Ricker, 14 N. H., 44 ; Gardner vs. Maxey, 9 B. Monroe, 90 ; Town of Hinesburgh vs. Sumner, 9 Ver., 23 ; Bell vs. Wood's Admr., 1 Bay, 249 ; Den vs. Moore, 2 South., 470 ; Badger vs. Williams, 1 Chip., 137 ; Raguet vs. Roll, 7 Ohio, 76 ; Shaw vs. Spooner, 9 N. H., 197 ; Steuben Bank vs. Mathewson, 5 Hill, 249 ; 22 Amer. Jur., 23, 24. )

SHERWOOD, Judge, delivered the opinion of the court.

Action on a sealed note, or writing obligatory, for the sum of $790.30, dated September 9th, 1870, due in twelve months,

and with two credits of that date indorsed thereon, one for $37.15 and the other for $75.00.

The petition mentions these credits, and states, that the defendants were entitled to them on the day the note was given.

The defendants filed separate answers. The father, C. L. Summers, admitted that he executed the note-as the security of his co-defendant and son, George W. Summers, but denied that he owed the plaintiff the amount then due thereon, $678 .15, or any other sum, and, as the grounds of his non-liability stated, that one W. B. Watson was the agent of A. Sumner & Co., of which plaintiff was the chief and managing member, which firm was the proprietor of the Wheeler & Wilson sewing machine; that Watson, as such agent, instituted a criminal proceeding against George W. Summers for embezzlement, charging him in his affidavit, dated September 8th, 1870, with having embezzled and converted to his own use certain sums of money, amounting to the sum of $787 .55, belonging to said firm; that on the 9th day of September, 1870, George W. Summers was arrested by virtue of a warrant procured by said Watson, and issued upon the filing of said affidavit; and that said amount was charged to have been collected by said George W. Summers, while acting as the agent of said firm, in the year 1869, that, while said criminal prosecution was still pending before the justice, who issued the warrant, Watson made an agreement with the defendant, George W. Summers, that if he would execute his obligation in writing to plaintiff for $790.30, payable twelve months after date, &c., and procure the signature of his father, C. L. Summers, thereto, and deliver the same to said Watson, that he, Watson, would immediately discharge said George W. Summers, and dismiss, suppress and abandon the prosecution against him; that George W. Summers complied with the proposition of Watson, signed such a note, and procured the signature of his father thereto, as security, and delivered the note to Watson, who thereupon, and in fulfillment of his promise and agreement, did dismiss, abandon and suppress

the prosecution; that the dismissing and suppressing of the criminal prosecution was the sole and only consideration of the note, and that the same was illegal and void.

The answers of the defendants were in the main alike, except that the answer of the defendant, George W. Summers, stated, that he did not owe the firm of Sumner & Co., or plaintiff, the sum of $787.55, nor had he converted to his own use, or embezzled, that sum; that there was, at the time of executing the note, an unsettled account between the firm and himself; that, his books and papers having been destroyed by fire, that firm attempted by means of the criminal prosecution to compel the defendant to settle on their own terms; that defendant refusing to do so, the prosecution was instituted, which was abandoned and he discharged upon complying with the proposition and agreement with Watson, &c.,

Replies, controverting the allegations contained in these answers, were duly filed, and the cause went to trial; at which evidence was introduced, tending to support the defenses set up in the answers, and also to show, that George W. Summers was indebted to the firm of Sumner & Co., for about the amount specified in the note.

At the conclusion of the testimony the court, at the instance of the defendants, gave two instructions; one which defined, and rightly defined, what is meant by the pendency of a criminal prosecution; and the other, of which complaint is chiefly made, was in these words: "If the jury believe from the evidence, that one W. B. Watson, acting as the agent of the firm of A. Sumner & Co. (of which plaintiff is a member) for the settlement of a claim of said firm against defendant George Summers, made an affidavit before Ford Hervey, a justice of the peace of Bear Creek township, Montgomery county, Mo., charging said defendant with the crime of embezzling $787.55 of the money of said firm, and that thereupon a warrant was issued by said justice for the arrest of said defendant upon said charge, and that thereafter to-wit: On the 9th day of Sept., 1870, and while said criminal prosecution was still pending and undisposed of, the obligation

sued on was executed by defendants, upon an agreement or understanding, either expressed or implied, between said Watson and said defendants, that said Watson would suppress or abandon said prosecution, or abstain from the further prosecution of said charge, then said obligation is void, and the jury must find for defendants, notwithstanding they may further believe, that said obligation was given for said sum of $790.30, as the alleged indebtedness of defendant George Summers to said firm, and for the additional purpose of securing the payment of said sum to plaintiff's said firm; and notwithstanding they may further believe from the evidence, that at the time of the execution of said obligation, or at any time thereafter, defendants, or either of them, promised to pay the same." And this case hinges therefore upon the propriety of giving this instruction.

Points, nearly akin to those involved in this record, were discussed by this court in Cheltenham Fire Brick Co. vs. Cook, 44 Mo., 29. In that case a bond was executed by T. F. Cook and I. Cook, to the plaintiffs, in which was recited that T. F. Cook had improperly appropriated to his own use certain moneys of an unknown amount, and that plaintiffs were willing and consented to give him thirty days time in which to make up the deficit, and conditioned that said Cook should pay, or secure, the same to the satisfaction of the plaintiffs within that time, provided that the sum thus to be paid or secured should not exceed the sum of $4,500 in so far as Isaac Cook was concerned. Suit was brought on this bond, and the petition averred, that T. F. Cook was in arrears to the amount of $16,000. The answer set up, that the bond was illegal and void; and that it "was executed while said Theodore was under arrest, and in consideration of the agreement of said Howard (the agent of plaintiff) to discharge him therefrom, and to suppress and abandon said criminal proceedings." And it was held, that the answer set up a good defense; and that if the facts thus alleged were established by proofs, it defeated the plaintiff's action.

There was a conflict of testimony on the point, as to wheth-

er any direct promise was made by Watson in this case to release George Summers from arrest; some of defendant's testimony being to that effect, but contradicted by the plaintiff's witnesses. But there was not a particle of controversy about the fact, that it was the understanding among all the parties to the transaction, that all prosecution was to cease upon the execution of the note; and that upon such execution that result did immediately follow. The justice, Ford Hervey, who in violation of his official oath lent himself to the shameful and unlawful abuse of legal process, says: "The matter was dropped at once on the note being signed, and Watson got into the buggy and started for St. Louis," &c. "I did not require any return on the warrant, because the prosecution was settled." And the constable says, " as soon as the note was executed, George Summers was released, and Watson took the note, and started for St. Louis. I made no return on the writ, because I considered the matter settled."

The witness, Watson, although denying most emphatically that any promises were made to defendants, or either of them, yet says, that he got out the warrant for the purpose of sending George Summers to the penitentiary, and that he "had no other object in view;" that "George was discharged as soon as the note was executed. Nothing was said about giving up the prosecution, but it was understood, that the matter would be dropped. I would have objected to the discharge of the defendant, George, if the note had not been given."

No wonder the jury came to the conclusion, at which they evidently arrived, that there must have been an agreement, either expressed or implied, that George Summers was to be released as soon as the note was executed, and it would tax to the utmost credulity itself to believe that such a thorough and perfect understanding could have been reached without some words having been employed to convey that material information. But it is unnecessary to discuss the evidence; it tended to establish the defense set up, and that is sufficient; as we have just seen from the case above cited, that the answer contained a good defense, it would seem to logically fol-

low, that an instruction to the jury, hypothecated upon a state of facts sufficient to establish the allegations of that answer, could not be erroneous.

Counsel for appellant however attempt to draw a distinction between the present case and that of the Cheltenham Fire Brick Co. vs. Cook, *supra*. It is not perceived what substantial difference or distinction there is between the two cases. It certainly could not, as counsel suggest, consist in the fact, that a sum certain was acknowledged to be due in the one case and not in the other; nor in the fact, that the note in this case was given for a specified amount, and the bond in that to secure the payment of a sum which was as yet unascertained: nor in the fact, that the note on its face bore no *indicia* of the consideration which moved its execution, while the bond showed a wrongful mis-appropriation of money. For if the consideration of any contract, either in whole or in part, be illegal, this defeats the entire contract, and it is wholly immaterial, whether the contract discloses such illegality, or it be established by evidence *aliunde;* the principle is the same in either event. It is the agreement, either express or implied, to abstain from prosecution, or to dismiss a prosecution already begun, which taints the whole transaction and avoids the contract. And it can make no sort of difference, whether a sum certain, or one in the future to be ascertained, is made the basis of the iniquitous agreement. As the court in Collins vs. Blantern, 2 Wils., 341, the leading case on the subject in England, say, "You shall not stipulate for iniquity." The law will not tolerate such agreements. The public has an interest, that those guilty of crime should be punished, and any stipulation, designedly frustrating such prosecution, will not be permitted to stand.

For these reasons the instruction was correct, and as those given on the part of the plaintiff were fully as favorable as he had any right to demand, the judgment with the concurrence of the other judges will be affirmed.