## MARY FOLEY *vs.* WILLIAM H. GREENE *et al.*

When a son had been guilty of embezzlement, and his mother made a note and executed a mortgage to the employer from whom he had embezzled, and the court was satisfied that the mother's controlling motive was to protect her son from exposure and prosecution:

*Held,* that she was not a free agent, and that the note and mortgage should be annulled and cancelled.

The maxim, *In pari delicto potior est conditio defendentis,* does not apply to such a case.

BILL IN EQUITY to annul a note and a mortgage of real estate. *January* 24, 1885. DURFEE, C. J. The bill shows that on August 1, 1881, the complainant gave the defendant Hanley a mortgage with power of sale on her real estate in Providence, to secure the payment of her promissory note for $1,000, of even date with the mortgage, payable to the order of Hanley one year after date, and that on December 30, 1881, Hanley assigned the mortgage to the defendant Greene. The bill alleges that the note and mortgage were given by the complainant to prevent the criminal prosecution of her son for embezzlement, and prays that the mortgage deed and the assignment thereof may be set aside as void and for other relief. It appears by allegation and evidence that, for several years before July 31, 1881, the complainant's son, John B. Foley, was in the employ of Hanley as clerk or collector, and as such had the custody of large sums of money collected for Hanley, who was a brewer and wholesale liquor dealer, and that in the spring of 1881 Hanley discovered that said John B. Foley had embezzled some $1,500 or more of

the money so collected. The bill avers that thereupon it was represented to the complainant, who was a poor and rather ignorant woman, by Hanley and by others, that if she would pay Hanley $500 and give her note and mortgage for $1,000 more, the whole matter of the defalcation would be kept quiet and no criminal charge would be made against her son, and that, being terrified, she furnished the money and gave the note and mortgage to save her son from prosecution and her family from disgrace. We think the averment is substantially proved. It is true there was no direct threat by Hanley, but there was a pressure exerted which had the effect, and was doubtless intended to have the effect, of a threat. Hanley testifies that the note and mortgage were given, not to stifle a prosecution, but as security for advances which he was making to the son to set him up in the liquor business, in the hope that he would make enough to repay him the amounts embezzled. The testimony shows that Hanley did make such advances, and undoubtedly if the son, who has failed, had succeeded and repaid the advances and the amounts embezzled, Hanley would have regarded the note and mortgage as satisfied. We think, however, that the complainant did not intend the note and mortgage as security for such advances, but gave them under the compulsion of her fears, with the understanding that they would have the effect to protect her son from exposure and punishment, and, in view of the testimony by her and her son as to her conversation with Hanley when they were given, we think that Hanley knew when he accepted them that such was her understanding and acquiesced in it. ·If the prospect of the advances had any influence, it had only an incidental or subsidiary influence, and did not affect the real character of the transaction. In our opinion, therefore, the note and mortgage are invalid. *Williams* v. *Bayley*, L. R. 1 H. L. 200.

The defendants contend that it is not the duty of the court to set them aside, if they are invalid, but that the court ought to leave the complainant in the predicament in which she has placed herself. It is doubtless true that the court, acting on the maxim, *In pari delicto potior est conditio defendentis et possidentis*, will not generally interpose for the relief of parties who are concerned in illegal agreements or transactions. But the maxim is not re-

garded, if public policy requires that relief shall be given, and where the parties are not *in pari delicto*, as when the complaining party acts under oppression, hardship, or undue influence, the maxim does not apply. Story Eq. Juris. §§ 298, 300. The case of *Bayley* v. *Williams*, 4 Giff. 638, is exactly in point. There agreements and securities were given by a father. to protect his son from criminal prosecution for the forgery of his father's name to certain promissory notes. There was nothing to show that the father was liable to pay the notes, or that the defendants negotiated for the agreements and securities on the footing of his being under any legal liability to pay them. The rule of law is thus laid down by the court, to wit, p. 659 :

" If the fair result of the evidence shows that the agreements were executed under influence felt by the plaintiff and exercised by the defendants, if the fear of the criminal prosecution against the plaintiff's son, or if the result of the discovery of a criminal act, for which the plaintiff was not liable, was used by the defendants against the plaintiff to operate upon his fears, so as to induce him to give a security which would relieve his son from a criminal prosecution, according to the law of this court a security obtained under such circumstances cannot stand. The inequality of the situation of the parties, the one exacting a security which the other is driven to give in order to save his son from exposure, disgrace, and ruin, taints the security obtained under the influence of such fears. If the main and inspiring purpose was the relief of the son from the consequences of his crime ; if this was the main consideration operating on the father's mind, and was the origin and real cause of the transaction, the intervention of other circumstances, or other collateral advantages to the father, will not be enough to justify the court in upholding such a security."

The rule could hardly be expressed in terms more appropriate to the case at bar. In *Bayley* v. *Williams*, the decree was entered declaring the agreements invalid, and ordering them to be delivered up to be cancelled, and the securities to be returned. Similar relief will be given here, the defendant Greene, who took the assignment after the maturity of the note, being subject to the equities.

*Edwin D. McGuinness*, for complainant.

*Charles E. Gorman*, for respondents.