## MISSISSIPPI VALLEY TRUST COMPANY v. EDITH RUTH BEGLEY, EFFIE M. RUTH and GEORGE BEGLEY, Appellants.

### In Banc, May 22, 1923.

1. **DURESS: Threats: Exercise of Free Will.** It is sufficient to constitute duress which will avoid a contract that one party thereto was prevented from exercising his free will by threats made by the other, and that the contract was obtained by reason of such threats. The test is the state of mind induced by the threats; the

character of the threats is not the material fact, it being sufficient to constitute legal duress if they deprive of his legal moral agency the party purporting to be obligated by the contract.

2. ———: ———: **To Expose Near Relative to Disgrace.** If the signatures of defendants to the note sued on were obtained by means of threats to expose a near relative by blood or marriage to deep disgrace, unless said note was signed by defendants, they amount to legal duress, if the triers of the fact believe that, by reason of said threatened action, the will of defendants was overcome, and but for such threatened action they would not have signed the note.

3. ———: ———: ———: **Threatened Prosecution: Pleading.** To constitute duress, in obtaining the signatures of defendants to a note given in lieu of others to which their signatures had been forged by their son, it was not necessary to allege that the payee itself threatened to prosecute said son for the crime of forgery; but the plea is sufficient if their answer alleges that the plaintiff payee threatened such action as would notify the proper public officials of such forgery, because it is to be presumed that as soon as such officer's learned of such felony they would do their duty and proceed to prosecute him.

4. ———: ———: ———: **Suit by Attachment.** Some of the notes to which defendants' signatures were forged by their son not being due, a threat of suit within an hour unless defendants signed another note in lieu of all of them, even though it were brought by attachment (which would necessarily have to be supported by an affidavit charging forgery), would constitute duress, since such affidavit would expose to the public that their son had forged the notes, and presumably expose him to criminal prosecution, and subject them to deep humiliation and disgrace. There is no more powerful instrumentality, by which to coerce and overpower the free agency of parents, than a threat to destroy their child and degrade his family.

5. ———: **Notes Forged by Son: Right to Sue Him.** The fact that the payee of the note in suit, given by defendants in lieu of others forged by their son, had the right to sue him for damages, or to sue to recover the money loaned him on the forged notes, or to sue on them by attachment, charging him with felony in the affidavit, does not prevent the plaintiff payee's threat of instituting such action from operating as duress upon defendants. Being his parents and knowing that he was guilty and that they could be compelled to testify in all criminal or civil suits that might be brought against him, and thus forced to become the instruments

of his exposure and punishment and of their own humiliation and disgrace, they were only the more humiliated and intimidated by the fact that such suits could be maintained.

6. ———: Pleading: **Overcoming Free Will.** Where substantive facts are stated from which duress may arise, the plea is good without an express averment that defendants' will was overcome. An answer which does not expressly state that defendants' will was overcome by anything except a threat to bring a civil action on notes forged by defendants' son, is sufficient, where such threats carried with them the terror of exposure and criminal prosecution of the son, to avoid which and the consequent humiliation they signed the note sued on, demanded of them in lieu of the forged notes.

7. **NOTE: Consideration: Agreement Not to Prosecute.** A note executed by parents in consideration of an agreement that the payee will not criminally prosecute their son for the forgery of their signatures to other notes, is illegal; and such agreement need not be express, but may be implied from all the evidence, facts and circumstances.

8. ———: ———: ———: **Pleading.** It is not necessary, in order to determine whether an agreement not to prosecute will be implied, that all the facts and circumstances be set out in the answer. If the agreement was express, it is sufficient to charge that it was an express agreement; if it was implied, it is sufficient to say that it was impliedly agreed, or simply agreed. It is not necessary to plead evidence.

Appeal from St. Louis City Circuit Court.—*Hon. Victor H. Falkenhainer,* Judge.

Reversed and remanded.

*Sam M. Phillips and Abington & Abington* for appellants.

(1) Defendant's answer stated a complete defense to the note sued on in plaintiff's petition, in so far as these defendants are concerned, in that it pleaded that the note was executed by these defendants in consideration of an implied agreement by plaintiff, that George Begley, Jr., their son, would not be prosecuted for the

crime of forgery, then threatened by the plaintiff. In other words, the note was given to stifle a criminal prosecution, and to compound a felony. The consideration of the note is illegal, and against public policy, and the note is therefore void. Sumner v. Summers, 54 Mo. 343; Sprague v. Rooney, 104 Mo. 358; Cheltneham Fire Brick Co. v. Cook, 44 Mo. 36; Baker v. Farris, 61 Mo. 389; McCoy v. Green, 83 Mo. 632; Janis v. Roentgen, 52 Mo. App. 117; Melone v. Fidelity Co., 71 Mo. App. 8; Met. Land Co. v. Manning, 98 Mo. App. 267; Rice Brothers v. Bank, 98 Mo. App. 699; Turley v. Edwards, 18 Mo. App. 684; Bell v. Campbell, 123 Mo. 1; Wolfolk v. Duncan, 80 Mo. App. 427; Sprig v. Rooney, 104 Mo. 358. If the consideration in a note was in part to secure the debt, and in part to stop the prosecution, the whole consideration is defeated and the note is illegal and void. Malone v. Fidelity & Cas. Co., 71 Mo. App. 8; Woolfolk v. Duncan, 80 Mo. App. 427; Sawyer v. Sanderson, 113 Mo. App. 245; Tandy v. Co., 113 Mo. App. 418; Dick v. Seal, 45 Mo. App. 477; Sumner v. Summers, 54 Mo. App. 340. An agreement based on the suppression of a criminal prosecution is void. Murphy v. Bottomer, 40 Mo. 67; Baker v. Farris, 61 Mo. 389; McCoy v. Green, 83 Mo. 626; Janis v. Roentgen, 52 Mo. App. 114; Met. Land Co. v. Manning, 98 Mo. App. 248; 9 Cyc. 505, 510; 13 C. J. 453; Sec. 3142, R. S. 1919. (2) The answer also stated a good defense against the note sued on in plaintiff's petition, in that it alleged that the note was executed by defendants under duress. In order to constitute duress, under the modern doctrine, it is no longer necessary to threaten death, imprisonment or great bodily harm, but all that is necessary is to exert such pressure, or to threaten such a condition of affairs, as to deprive the other party to the transaction of his free will. Brown v. Worthington, 162 Mo. App. 508; 13 C. J. 402, 403; Simmons v. St. Louis, 192 S. W. 394; Am. Mfg. Co. v. St. Louis, 197 S. W. 399; Niedermeyer v. Curators, 62 Mo. App. 654; Brewing Co. v. St. Louis, 187 Mo. 377; State ex rel. v. Reynolds, 194 S. W. 878; Link v. Real Estate Co., 182 Mo. App. 536; Brown

v. Worthington, 162 Mo. App. 516; Willford v. Eason, 110 Ark. 303; Maxwell v. Griswold, 10 How. 256; Swift v. United States, 111 U. S. 228, 4 Sup. Ct. Rep. 247; Roberts v. Frank Bros., 132 U. S. 17, 10 Sup. Ct. Rep. 5; Gaar, Scott & Co. v. Shannon, 223 U. S. 468, 56 L. Ed. 512; Merkee v. City of Rochester, 13 Hun, 157; United States v. Rothstein, 109 C. C. A. 521, 187 Fed. 268. (3) In addition to threatening to prosecute George Begley, Jr., for forgery, plaintiff's representatives threatened the defendants herein if they would not endorse the note sued on herein, at the end of one hour, plaintiff "would institute in the Circuit Court of Butler County, an action based upon the forgery of, and upon the forged notes aforesaid." What kind of an action could be brought upon the forgery of this paper? The answer, of course is an attachment suit, and this was the kind that plaintiff's representatives threatened to bring, and in fact, the kind they had prepared to bring at the time the threat was made. Sec. 1725, R. S. 1919; Alexander v. Wade, 107 Mo. App. 321. The threatened lawsuit, which plaintiff intended to institute against George Begley, Jr., by attachment, was not civil in character, but upon the contrary, it was criminal in character, because it charged him with the commission of a felony, and it devolved upon the plaintiff to prove in order to win the lawsuit, that he was guilty of a felony. Stone Milling Co. v. McWilliams, 121 Mo. App. 319; Home Lumber Co. v. Hartman, 45 Mo. App. 647.

*Jourdan, Rassieur & Pierce* and *Samuel H. Liberman* for respondent.

(1) It is no denial of the execution of the instrument in suit where the answer denies each and every allegation in the petition "except such as are specifically admitted." Dezell v. Fidelity & Cas. Co., 176 Mo. 253; Ritchey v. Home Ins. Co., 98 Mo. App. 115; Brickell v. Williams, 180 Mo. App. 572. (2) Where an answer admits the execution of an instrument for the payment of

money and states no defense, the plaintiff is entitled to judgment. North v. Nelson, 21 Mo. 360; 31 Cyc. 608. (3) A threat to file a lawsuit, civil in character, will not support a plea of duress. Wood v. Tel. Co., 223 Mo. 537; Claflin v. McDonough, 33 Mo. 416; Buchanan v. Sahlein, 9 Mo. App. 552; Lilienthal v. Brewing Co., 102 N. Y. Supp. 1052; Murray Fixture Co. v. Sullivan, 115 Pac. 259. (4) Where specific facts are pleaded in a cause of action or defense, the party so pleading the specific facts is bound by the conclusions to be drawn from such facts. 21 R. C. L. p. 450, sec. 14; Stonemets v. Head, 248 Mo. 254; Hunter v. Sloan, 195 Mo. App. 73; McManamee v. Mo. Pac. Ry. Co., 135 Mo. 447; Zasemowich v. American Mfg. Co., 213 S. W. 802; Tuepker v. Sovereign Camp, 226 S. W. 1007. (5) The facts alleged in the answer do not show more than a threat to file a lawsuit, civil in character. They do not support a conclusion of illegal consideration, for the reason that the answer does not allege that plaintiff had actual knowledge of any crime, that plaintiff agreed to conceal any evidence of such crime, that plaintiff would not institute a criminal proceeding and that such acts constituted the sole consideration for the giving of the note. Cheltenham Fire Brick Co. v. Cook, 44 Mo. 29; International Harvester Co. v. Spires, 223 S. W. 799. (6) A plea of duress cannot be predicated upon a threat to file a lawsuit civil in character. Wood v. Tel. Co., 223 Mo. 537; Dausch v. Crane, 109 Mo. 323; Claflin v. McDonough, 33 Mo. 412; 13 C. J. sec. 314, p. 399; Morse v. Woodsworth, 115 Mass. 233; Atkinson v. Allen, 71 Fed. 58. (a) The answer avers that plaintiff threatened to bring a suit based on the forged notes and on the forgery thereof. This action plaintiff was entitled to bring. The threat to do that which a party has a legal right to do cannot constitute duress. Holmes v. Hill, 19 Mo. 159; Miller v. Davis, Estate, 52 Colo. 485; Goos v. Goos, 57 Neb. 294; Kansas City Railroad Co. v. Graham, 145 S. W. 632; United States Banking Co. v. Veale, 84 Kan. 385; Creveling v. Saladino, 89 N. Y. Supp. 834; Lillienthal v. Brew. Co., 102 N. Y. Supp. 1051; Chambers v. Irish, 132 Iowa,

319; Hart v. Strong, 183 Ill. 349; 13 C. J. p. 399. (b) To hold that a threat to do that which a party has a legal right to do may constitute duress would be subversive of sound public policy. 15 C. J. secs. 304, 342; 7 R. C. L. sec. 29; Reed v. Ownby, 44 Mo. 206; Dunklin County v. Chouteau, 120 Mo. 378; St. Louis Ry. Co. v. Southern Ry. Co., 138 Mo. 591; Wilson v. Beckwith, 140 Mo. 359; Laclede Land & Imp. Co. v. Schneider, 177 S. W. 388; Daniels v. State, 18 Del. 586, 54 L. R. A. 286.

SMALL, C.—Suit on a promissory note, filed March 24, 1920. There was judgment for the plaintiff on the pleadings on October 11, 1920, for $69,761.25, the amount of said note (less a voluntary credit of $2,278.20), against defendants Effie M. Ruth and George Begley. The suit was also instituted against Edith Ruth Begley, but no judgment was rendered against her, because she was not served with process and did not appear in the case. The record shows that Edith Ruth Begley was the wife of George Begley, Jr., and defendant Effie M. Ruth was her mother, and defendant George Begley was the father of said George Begley, Jr.

The note sued on was executed by George Begley, Jr., and Edith Ruth Begley as makers, and was indorsed by defendants George Begley and Effie M. Ruth. It was dated St. Louis, Mo., November 1, 1919. It was for $70,000, payable to the order of plaintiff, Mississippi Valley Trust Company, ninety days after date, with interest from date at six per cent per annum. Demand for payment, protest and notice of dishonor were therein waived by all parties.

Defendants Effie M. Ruth and George Begley filed joint and separate answer, which, besides a general denial, set up that said George Begley, Jr., forged the name of his wife, Edith Ruth Begley, as maker, and the names of the defendants, Effie M. Ruth, his mother-in-law, and George Begley, his father, as indorsers, at Butler County, Missouri, to certain promissory notes payable to the Mississippi Valley Trust Company, as follows: One note, dated May 2, 1919, for $10,000, due

six months after date; one note dated August 18, 1919, for $20,000, due four months after date; one note dated September 24, 1919, for $30,000 due ninety days after date; one note dated October 14, 1919, for $10,000, due ninety days after date.

The answer alleges that "said purported indorsements of Effie M. Ruth and George Begley and the signature of Edith Ruth Begley, were forgeries as aforesaid, and were committed and done by the said George Begley, Jr., without the knowledge, consent or approval of defendant Edith Ruth Begley, George Begley or Effie M. Ruth." The answer further states that after forging said names upon said notes, the said George Begley, Jr., for a valuable consideration, delivered the same to the plaintiff. The answer then continues as follows:

"And which said acts of the said George Begley, Jr., in forging said names upon and delivering said note to this plaintiff as aforesaid, constitute a felony under the laws of the State of Missouri.

"Defendants further state that all the wrongful acts of the said George Begley, Jr., in forging and delivering the said notes aforesaid were done without the knowledge, connivance, procurement or consent of these defendants.

"Defendants further answering state that on the first day of November, 1919, and after the maturity of the first note hereinabove mentioned, but before the maturity of the other notes hereinabove mentioned, the plaintiff, Mississippi Valley Trust Company, acting by and through its agents, servants and employees in the scope of their employment and at the County of Butler and State of Missouri, presented all of the above mentioned notes for payment and upon being informed by these defendants and their legal representatives that said notes were forgeries, illegally and unlawfully induced, procured and compelled defendant Edith Ruth Begley to sign as surety and co-maker, and defendants George Begley and Effie M. Ruth to sign their names as indorsers on the back of the note mentioned in plaintiff's petition under duress, by means of threats to de-

fendants and their legal representatives to the effect that in the event Edith Ruth Begley would not sign said note as co-maker and surety with her husband, George Begley, Jr., and that defendants George Begley and Effie M. Ruth would not sign said note as sureties, co-makers or indorsers, the plaintiff, at the end of a period of one hour, would institute in the Circuit Court of Butler County, Missouri, an action based upon the forgery of and upon the forged notes aforesaid, the effect of which proposed action and suit of plaintiff would be to expose and publish broadcast, and particularly in Poplar Bluff, Butler County, Missouri, the home of defendants, and their associates, friends and relatives, the fact that said George Begley, Jr., was guilty of a felony and which said fact at said time was known only to the said George Begley, Jr., and the parties to this suit, their agents and servants, and which threatened acts of plaintiff, its agents and servants in giving publicity in Poplar Bluff, Butler County, Missouri, in the manner and by the means aforesaid, to the fact that George Begley, Jr., was guilty of a felony, would bring knowledge of such fact to the relatives, friends and associates of his wife, the defendant Edith Ruth Begley, her mother, the defendant Effie M. Ruth, and his father, the defendant George Begley, which would result in the great humiliation and disgrace of the defendants and each of them, and which said fact was well known to the plaintiff, its agents, servants and employees at the time of the making of said threats aforesaid. Defendants state that a further result of the institution of said threatened action and the prosecution of the same would be to bring knowledge to the officers of the law of Butler County, Missouri, and particularly the circuit judge, prosecuting attorney and sheriff thereof, that said George Begley, Jr., was guilty of a felony under the laws of the State of Missouri, and which knowledge on the part of said officers would result in said George Begley, Jr., being convicted of such felony and serving a term of imprisonment in the Missouri State Penitentiary, all of which

said facts would have been to the great humiliation and disgrace of these defendants. Defendants further say that their signatures upon said notes as aforesaid are not their free act and deed, but in the matter of placing their signatures thereon, at the County of Butler and State of Missouri, their free will was overcome by the threats above mentioned and the inducements, promises and agreements hereinafter set forth.

"Defendants further answering say that the time of the signing of said note by these answering defendants, it was mutually understood and impliedly agreed by and between said parties thereto, at said county and state aforesaid, that in the event defendants would sign the note described in plaintiff's petition, said George Begley, Jr., would not be prosecuted criminally for the crimes of forgery aforesaid, which prosecution at the time was threatened by plaintiff, and that no court proceeding would be instituted that would expose the said George Begley, Jr., and humiliate and disgrace these answering defendants, and defendants say that because of said threats aforesaid and the understanding and agreement aforesaid, they signed said note, and for no other reason whatsoever.

"Defendants further state that for the reasons aforesaid the note mentioned in plaintiff's petition is null and void, and that these defendants are entitled to have said note produced in court and cancelled.

"Defendants further answering state that these defendants, as plaintiffs, have filed and there is now pending in the Circuit Court of Butler County, Missouri, against this plaintiff, as defendant, a suit returnable to the July term, 1920, of the Circuit Court of Butler County, Missouri, the general object and nature of which is to compel the defendant in that suit, plaintiff in this suit, to produce the note sued on herein in the Circuit Court of said Butler County, Missouri, and that thereupon said note shall be cancelled and for naught held, for the reason that the same was given under duress and to stifle a criminal prosecution, as stated in this answer, and that at the time of filing of this answer said

suit remains undisposed of in said Circuit Court of Butler County, Missouri.

"Defendants further say that plaintiff has listed and filed a verified copy of said note for allowance and payment in the Bankrupt Estate of George Begley, Jr., now being administered in the United States District Court within and for the Southeastern Division of the Eastern District of Missouri.

"Wherefore, having fully answered, defendants pray that the note described in plaintiff's petition be cancelled and declared null and void by the judgment of this court, and that defendants may go hence without day, together with their costs in this behalf expended."

The answer was duly verified.

After their motion for new trial was overruled, said defendants, Effie M. Ruth and George Begley, duly appealed to this court.

The appellants contend the answer contains a good plea of duress and states a further good defense, in that it sufficiently alleges that the note sued on was given to suppress the criminal prosecution of George Begley, Jr., for forging the names of defendants to said notes.

I. As To Duress: It now seems well settled that it is sufficient to constitute duress, which will avoid a contract, that one party thereto is prevented from exercising his free will by reason of threats made by the other, and that the contract is obtained by reason of such fact. The test is the state of mind induced by the threats made. The character of the threats is not so material, it being sufficient to constitute legal duress, if they deprive the party purporting to be obligated by the contract of his free moral agency. [Turley v. Edwards, 18 Mo. App. 676 (threat to reveal hiding place of son and deliver him to officers for prosecution for perjury); Bell v. Campbell, 123 Mo. 1 (threat to prosecute son-in-law for embezzlement); Lacks v. Butler Co. Bank, 204 Mo. 456 (threat to prosecute brother for shortage); Hensinger v. Dyer, 147 Mo. 219 (threat to prosecute hus-

**Duress.**

band for embezzlement); Brown v. Worthington, 162 Mo. App. 508 (threat not to deliver drove of hogs purchased, so as to prevent plaintiff from fulfilling contract of re-sale); Niedermeyer v. Curators, 61 Mo. App. 654 (threat to refuse admittance of plaintiff as student unless he paid illegal tuition fees); Fout v. Giraldin, 64 Mo. App. 165 (threat not to satisfy deed of trust unless plaintiff paid more than was due); Link v. Real Estate Co., 182 Mo. App. 536 (threat to sell real estate under deed of trust after notes had been paid); Wells v. Adams, 88 Mo. App. 215 (threat to refuse to release mortgage un-less illegal demand was paid); Brewing Co. v. St. Louis, 187 Mo. 367, and Westlake v. St. Louis, 77 Mo. 47 (threat to turn off water and thereby injure business unless il-legal demand was paid); Simmons Hardware Co. v. City of St. Louis, 192 S. W. 394, and State ex rel. v. Reynolds, 194 S. W. 878 (threat in each case to refuse license to do business and to prosecute unless illegal demand was paid); Lappin v. Crawford, 221 Mo. 380 (threat to pre-vent plaintiffs from obtaining loan already negotiated, unless they paid illegal demand as commission); Ryan v. Strop, 253 Mo. 1 (threat to prosecute husband for embezzlement); American Mfg. Co. v. City of St. Louis, 192 S. W. 399 (threat to refuse license to do business and to prosecute unless illegal demand was paid).].

The above cases show that the law in this State is that threats of personal injury or criminal prosecution and imprisonment, as formerly held by the English and some American courts, are no longer required to make out legal duress, but that each case stands on its own heels, and if the obligation in question was incurred by reason of the threatened action or conduct of the party obtaining the contract, to expose the other party or his near relative by blood or marriage to deep disgrace, or himself to serious financial loss or injury of his business or property under distressing circumstances which an ordinary suit at law or equity might be inadequate to remedy, legal duress exists, provided the triers of the fact, whether court or jury, believe that by reason of

such threatened action the will of the party entering into the obligation was overcome, and but for such threatened action or conduct he would not have entered into such obligation. And this is the modern rule generally in this country.

Section 319 of 13 Corpus Juris, page 402, is as follows: "THE MODERN DOCTRINE. The rule as it now exists is that the question of duress is one of fact in the particular case, to be determined on consideration of the surrounding circumstances, such as age, sex, capacity, situation, and relation of the parties; and that duress may exist, whether or not the threat is sufficient to overcome the mind of a man of ordinary courage, it being sufficient to constitute duress that one party to the transaction is prevented from exercising his free will by reason of threats made by the other, and that the contract is obtained by reason of such fact. Unless these elements are present, however, duress does not exist. The test is not so much the means by which the party was compelled to execute the contract as it is the state of mind induced by the means employed—the fear which made it impossible for him to exercise his own free will."

And Section 325, page 404, of said 13th volume of Corpus Juris, is as follows: "(Sect. 325) 6. ON WHOM DURESS MUST BE IMPOSED. As a rule an agreement cannot be avoided because the duress was imposed on a third person. . . . An exception to the general rule is where the subject of duress is the wife, husband, parent, child or other near relative; and in such cases the fact that the threatened prosecution or imprisonment may be lawful does not affect the voidability of the contract" (citing, among other authorities, Davis v. Luster, 64 Mo. 43, and Hensinger v. Dyer, 147 Mo. 219). "Nor is actual guilt or innocence of the accused material."

II. There is nothing in Wood v. Telephone Co., 223 Mo. 537, in conflict with the doctrine above promulgated. In that case it was ruled that there was no duress, be-

cause the contract in suit was made under threat
**Threat of** of an ordinary civil suit, which neither directly
**Civil Suit.** nor indirectly exposed. the party or his near
relatives to any deep disgrace or prosecution for crime
or other distressing personal or financial circumstances,
which had any tendency to deprive the party entering
into the compromise in that case of that free quality of
mind essential to the making of a contract. On page
565, the court said the claim of duress in that case was
"womanish." GRAVES, J., cites Morse v. Woodsworth,
155 Mass. l. c. 250, where the court says: "It has often.
been held that threats of civil suit, and of ordinary pro-
ceedings against property, are not enough, because ordi-
nary persons do not cease to act voluntarily on account
of such threats."

The case of Claflin v. McDonough, 33 Mo. 412, where
plaintiffs were denied recovery of an illegal license tax
which they paid because they were threatened with
prosecution by indictment, would seem to be contrary to
the ruling of this court in the cases of Simmons and
American Mfg. Co. v. City of St. Louis, 192 S. W. 394,
399, and State ex rel. v. Reynolds, 194 S. W. 878, 880, and
is much weakened, if not, in effect, overruled, by the lat-
ter. Besides, in the Claflin Case, the petition alleged that
the prosecution by indictment threatened simply entailed
heavy expense and loss, and not the exposure of the
plaintiff or any near relative to the charge of felony with
all the deep disgrace, humiliation and mental suffering
involved in such a charge.

Said case of Wood v. Telephone Co., 223 Mo. 558,
relied on by respondent, is in harmony with the modern
doctrine of duress above announced. After quoting from
the authorities announcing the former doctrine, the
court, per GRAVES, J., on pages 558-9, says:

"But in modern practice the courts have gone furth-
er and this later doctrine is thus stated by the same au-
thority, 9 Cyc. 450: 'The modern doctrine holds that there
is no legal standard of resistance which a person acting
upon must come up to at his peril of being remediless
for a wrong done to him, and no general rule as to the

sufficiency of facts to produce duress. The question in each case is, Was the person so acted upon by threats of the person claiming the benefit of the contract, for the purpose of obtaining such contract, as to be bereft of the quality of mind essential to the making of a contract, and was the contract thereby obtained? Duress then, according to this class of cases, includes that condition of mind produced by the wrongful conduct of another, rendering a person incompetent to contract with the exercise of his free will power, whether formerly relievable at law on the ground of duress or in equity on the ground of wrongful compulsion.'

"As to what will not constitute duress in law the same authority, 9 Cyc. p. 448, says: 'WHAT IS NOT LEGAL DURESS. Duress by mere advice, direction, influence, and persuasion is not recognized in law. Nor can a charge of legal duress be predicated upon a threat to injure one's credit, to withhold payment of a debt, to refuse performance of a contract, or to foreclose or exercise the power of sale on a mortgage; a threat of arrest or arrest on civil process on a legal claim, when such arrest is allowed by law; or a threat of, or the bringing of, a lawsuit or civil process.'

"Some modern cases recognize the doctrine of threats to destroy property or duress of goods under oppressive circumstances, *but whatever be the kind of alleged duress the test of the mental condition is as above stated.*" (Italics ours.)

We do not think the learned judge intended an unqualified endorsement of all the language quoted from 9 Cyc. 448, as to what does not constitute duress in law as might be distinguished from equity, because the equitable principles of duress, especially in this State, are enforced in cases at law. In the suit before us, the duress is pleaded as an equitable defense, and it is prayed that the note be surrendered and cancelled on account thereof. The concluding statement of the court shows that the test of duress is the equitable test, to-wit, the mental condition induced by the threats, whatever the

kind of duress alleged, as stated in the first quotation from 9 Cyc. 540, contained in the opinion of the court above set forth.

III. The rule of law being as stated in the foregoing paragraphs, do the facts and circumstances alleged in the answer before us show that the note sued on was executed under duress? We think so. Said answer shows that the son and son-in-law of the defendants forged their names to four notes aggregating $70,000. That they were presented to the defendants for payment although only one was due, whereupon defendants discovered their names thereon, and at once informed the plaintiff their names were forged. Whereupon, plaintiff threatened that if defendants did not sign the note sued on to take up such forgeries within one hour, suit would be brought in Butler County where the notes were dated and the forgery committed "based upon the forgery of and upon the forged notes aforesaid" which would expose the fact that said George Begley, Jr., was guilty of a felony. in Poplar Bluff, the home of defendants, and greatly humiliate and disgrace defendants, which plaintiff well knew, and that the institution and prosecution of said threatened suit would bring to the knowledge of the officers of the law in said Butler County, and particularly, the circuit judge, prosecuting attorney and sheriff, that said Begley, Jr., was guilty of a felony, which would result in said George Begley, Jr., being convicted of such felony and serving a term of imprisonment in the penitentiary, to the great humiliation and disgrace of the defendants. That their signatures upon said note was not their free act and deed but their free will was overcome by the threats above mentioned "and the inducements, promises and agreements hereinafter set forth." Then follows this allegation: "Defendants further answering say that at the time of the signing of said note by these answering defendants, it was mutually understood and impliedly

*Duress Pleaded.*

agreed by and between said parties thereto, at said county and state aforesaid, that in the event defendants would sign the note described in plaintiff's petition, said George Begley, Jr., would not be prosecuted criminally for the crimes of forgery aforesaid, which prosecution at the time was threatened by plaintiff, and that no court proceeding would be instituted that would expose the said George Begley, Jr., and humiliate and disgrace these answering defendants, and defendants say, that because of said threats aforesaid, and the understanding and agreement aforesaid, they signed said note, and for no other reason whatsoever.'' Then follows the further allegation that the defendants had brought a suit against the plaintiff in the Circuit Court of Butler County, returnable to the July term, 1920, to cancel said note "for the reason that the same was given under duress and to stifle a criminal prosecution as stated in this answer.''

The answer on its face shows that the note sued on was procured by a threat to institute a civil suit based on the forgery, and also upon the forged notes, and furthermore by the prosecution of said Begley, Jr., criminally for the crime of forgery, "which prosecution at the time was threatened by plaintiff.''

IV.   But we do not think that it was necessary for defendants to allege that plaintiff threatened to itself criminally prosecute said George Begley, Jr.   It is sufficient if plaintiff threatened such action (which is alleged) as would notify the public officials of said county of such forgery, because it is to be presumed (as it is also alleged) that as soon as such officials learned of such felony they would do their duty and prosecute said George Begley, Jr., criminally for his crime.

Threatened Prosecution: Exposure.

In American Mfg. Co. v. St. Louis, 192 S. W. 399, above cited, it was ruled by this court, that the refusal of the collector to issue a merchant's license to the plaintiff on the tender of lawful fee therefor was itself a

threat on the part of the collector to do his duty in such cases, and to arrest and prosecute and not permit plaintiff to do business without obtaining such license, although he required plaintiff to pay an illegal charge therefor in order to obtain it.

In Lacks v. Butler County Bank, 204 Mo. 456, supra, this court held that a threat on the part of the bank to notify the surety company on the cashier's bond that he was short in his accounts, was a threat on the part of the bank itself to prosecute the cashier for embezzlement, as the surety company, on obtaining such information, would presumably prosecute the cashier. The court said, at page 479: "Ferguson, a defendant, admits threats, but says that he had in mind the surety company when he said that Lacks had better fix it up or that he would be prosecuted. The surety company was not mentioned. Begley's testimony was not all it should be to justify the defendants' position in the case. He admits that he desired and requested that they notify the surety company, and Abington says, 'They [the Lacks] knew what that meant.' Abington heard the directors discuss the matter of notifying the company. It can make no difference whether the threat was for the bank officials to directly prosecute or indirectly prosecute through the agency of the surety company."

So, in this case, it would be trifling with common experience to say that defendants did not know what it meant when plaintiff threatened within an hour to bring suit in said Butler County based upon said forgery and the forged notes. In the Lacks Case, it was not the duty of the surety company to prosecute the cashier for his alleged shortage upon being notified thereof, but simply, no doubt, the usual custom of such companies to do so. But in the case at bar it was the duty of the public officials to prosecute said Begley, Jr., for his felony as soon as knowledge thereof came to their attention, which it would be idle to say would not be the case as soon as said threatened civil suit based upon said forgery was instituted. But one of the forged notes was then due,

and the only suit which could have been brought on all of them within one hour as threatened was an attachment suit on the ground the plaintiff's cause of action arose from the commission of a felony (R. S. 1919, sec. 1725) which would have been set forth in the affidavit for attachment.

So, a suit for damages, or to recover the money loaned "based on said forgery" as threatened, could have been brought. Either or both of such suits would have exposed said forgery in said court in said county where all the parties resided and have been brought to the knowledge of the circuit judge and sheriff and public generally, including the prosecuting attorney, with the result, had such officers done their duty, and presumably they would, that said George Begley, Jr., would have been prosecuted criminally for said crime. The plaintiff must be chargeable with notice of this fact, as every person is chargeable with knowledge of the natural, usual and probable consequences of his acts.

We hold that to threaten to charge a son or son-in-law with an infamous crime and expose him to the public, including the officers of the law, where he resides, as a felon, and thereby subject him to criminal prosecution, either by such a solemn instrument of writing as a petition or affidavit in a civil suit in court or by word of mouth or otherwise, is much more potent to produce duress and to cause a father and mother-in-law to lose their freedom of mind and make a contract against their will to save said son and son-in-law from jeopardy and disgrace and themselves from humiliation, disgrace and mental agony than the mere threat under distressful circumstances to illegally take one's property or ruin one's business, as held in many of our cases above cited. That it would be a reproach to the administration of justice, if the holiest and tenderest instincts of mankind could be thus played upon and taken advantage of to compel parents to pay debts of their children for which they were in no manner obligated, is to characterize such conduct with mildness.

Turley v. Edwards, 18 Mo. App. 682 et seq., wa a suit in equity to cancel a mortgage on a mother's farm, given by her because the defendant, the bondsman of her son, threatened to expose his whereabouts to the law officers and have him arrested and prosecuted for the crime of perjury with which he had been charged. The opinion of the court, setting aside the mortgage, was written by PHILIPS, J., with the usual vigor and learning for which he was justly distinguished. Among other things, Judge PHILIPS said: "The plaintiff insists that the notes and deed of trust were obtained from her under duress. If so the law will nullify the act, for the very essence of a contract is the free consent of both parties. 'The consent that binds must be voluntary.' [Davis v. Luster, supra.] What amounts to duress, such as would avoid an executory contract like this, is a little difficult of an arbitrary definition. In the very necessities of the law, in striving for exact and equal justice, it must possess flexibility enough to meet the varying facts and circumstances of each case as it arises." He then quotes with approval from a Pennsylvania case:

"And we think the opinion of Mr. Evans expresses the doctrine which is now approved by the judicial mind, both of this country and England, that is, that any contract produced by actual intimidation ought to be held void, whether, as arising from a result of merely personal infirmity, or from circumstances which might produce a like effect upon persons of ordinary firmness.

"He cites the case of Williams v. Bayley (1 Law R. H. L. case 200), where a son had obtained money from a bank on forged endorsements. The father, under the pressure of the situation, was induced to mortgage his property to save the son. Lord WESTBURY placed its invalidity on two grounds: (1) The defendant in the execution thereof was not a free and voluntary agent. (2) The contract was illegal. In the opinion he says: 'The only motive to induce him to adopt the debt was the hope that by so doing he would relieve his son from the inevitable consequences of his crime. The question, there-

fore, my lords, is, whether a father appealed to under such circumstances, with the knowledge that unless he does so, his son will be exposed to a criminal prosecution, with the certainty of a conviction, can be regarded as a free and voluntary agent. I have no hesitation in saying that no man is safe, or ought to be safe, who takes a security for the debt of a felon, from the father of a felon, under such circumstances. A contract to give security for debt of another, which is a contract without consideration, is above all things a contract which should be based upon the free and voluntary agency of the individual who enters into it. But it is clear that the power of considering whether he ought to do it or not, whether it is prudent to do it or not, is altogether taken away from a father when he is brought into the situation of either refusing and leaving his son in that perilous condition, or of taking on himself the amount of that civil obligation. I have, therefore, my lords, in that view of the case, no difficulty in saying that, so far as my opinion is concerned, the security given for the debt of the son by the father, under such circumstances, was not the security of a man who acted with that freedom and power of deliberation that must undoubtedly be considered as necessary to validate a transaction of such a description.'

"So Parsons on Contracts (Vol. 1, p. 395, 7 Ed.), after stating the common law definition of duress, says: 'These distinctions would not now probably have a controlling power in this country; but where the threat, whether of mischief to the person or the property, or to the good name, was of sufficient importance to destroy the threatened party's freedom, the law would not enforce any contract which he might be induced by such means to make. And where there has been no actual contract, but money has been extorted by duress, under circumstances which give to the transaction the character of a payment by compulsion, it may be recovered back.'

"An attentive examination of modern adjudications will satisfy anyone of the extension of the doctrine of

duress, more commensurate with the demands of a constantly broadening and enlightening civilization. . . .

"Few living judges have well earned a higher reputation in the administration of equity jurisprudence than Judge COOPER of the Supreme Court of Tennessee. In Coffman v. Lookout Bank, 5 Lea, 232, he granted affirmative relief to a father who had been unduly influenced to execute notes to the defendant bank to prevent a prosecution of his son for forgery, and the consequent scandal to his family. The decision is placed on the authority of the following text from Story, Eq. Jur., sec. 251: 'Cases of surprise, and sudden action without due deliberation, may be referred to the head of fraud or imposition. An undue advantage is taken of the party under circumstances which mislead, confuse, or disturb the just result of his judgment, and thus expose him to be the victim of the artful, the importunate, and the cunning. . . . If proper time is not allowed the party, and he acts improvidently, if he is importunately pressed—if he is not fully aware of the consequences, but is suddenly drawn into the act, if he is not permitted to consult disinterested friends or counsel before he is called on to act, in circumstances of sudden emergency, or unexpected right of acquisition; in these and many like cases, if there has been great inequality in the bargain, courts of equity will assist the party, upon the ground of fraud, imposition or unconscionable advantage. [In the case before us, but one hour was given defendants to get together and act.] . . . A father, overwhelmed by the information that his eldest son had been guilty of forgery, upon the spur of the moment, and doubtless in the vain hope on his part of saving the family honor, executes a note for a larger sum of money than his entire estate would bring at forced sale.' [Here it was for the very large sum of $70,000.]

"Story (Sec. 239) also says: 'Cases of an analogous nature may easily be put, where the party is subjected to undue influence, although in other respects of

298 Mo.—45

competent understanding. As, where he does an act, or makes a contract, when he is under duress, or the influence of extreme terror, or of threats, or of apprehension short of duress. For, in cases of this sort, he has no free will, but stands *in vinculis*. And the constant rule in equity is, that, where a party is not a free agent, and is not equal to protecting himself, the court will protect him.' ''

The learned judge then quotes the following from a Massachusetts case: ''No more powerful and constraining force can be brought to bear upon a man to overcome his will and extort from him an obligation, than threats of great injury to a child.''

Then, in closing his opinion, Judge PHILIPS, among other things, says: ''It would be difficult for any mind to conceive of a more powerful instrumentality, by which to coerce the action and overpower the free agency of a mother, than a threat to destroy her child—to degrade him and his family. . . .

''It is true the law rests not on sentiment or emotion, but it reaches toward perfection just in proportion as it ceases to be 'the two-edged sword of craft and oppression,' and becomes 'the staff of honesty and the shield of innocence.'

''It would be a just reproach to our jurisprudence and ministers of justice to hold that to be duress—destroying free agency—which threatens mere physical injury, while that which touches and threatens to trample upon the nobler passion of love, of family pride and honor, involving the ruin of a mother's child, is not a more overwhelming influence.'' And on page 691: ''In a recent case decided by the Supreme Court of Rhode Island, Foley v. Greene, 14 R. I. 618, it is held, that when a son has been guilty of embezzlement, and his mother made a note and executed a mortgage to the employer from whom he had embezzled, and the court was satisfied that the mother's controlling motive was to protect her son from exposure and prosecution, that she was not a free agent, and that the note and mortgage should be

cancelled. . . . We are unwilling that the law, which is among the noblest of all sciences, shall stand still in the march of civilization while all its fellows advance.''

In the English case of Williams v. Bayley, 1 L. R. (H. L.) 200, decided by the House-of-Lords, the case decided by Chancellor COOPER, 5 Lea, 232, and the Rhode Island case of Foley v. Greene, quoted from by Judge PHILIPS, there was no evidence of any direct threat of criminal prosecution. In the House-of-Lords case and the case decided by Judge COOPER, the son had forged the name of the father, as indorser on certain notes to the bank, as in this case. The father was appealed to by the banks to give his note and mortgage to make good the forgery. No direct threat to prosecute the son was made by the banks nor by the employer, in the Rhode Island case, who appealed to his mother to make good her son's embezzlement. But in each case, the parents knew that their son had committed a felony and would be exposed to a criminal prosecution with a moral certainty of conviction unless they complied with the demand made upon them. In each case, the court held the parent was not a free and voluntary agent in making the agreement, but was moved to do so by fear of such exposure, prosecution and conviction by the pressure of the circumstances and what was said and done, although no direct threat was made to prosecute the son.

So, in this case, we hold, the threats, facts and circumstances, including the hasty and precipitate action required of defendants by the plaintiff, independent of the direct allegation in the latter part of the answer, that plaintiff threatened to itself prosecute George Begley, Jr., for the crime of forgery, were well calculated to expose said forgery, with a moral certainty of his criminal prosecution and conviction therefor, and to destroy the free agency of the defendants and make out a good defense of duress herein.

V. The fact that plaintiff had a right to prosecute said George Begley, Jr., criminally, to sue him for dam-

ages or for recovery of the money loaned him, based upon said forgery, or to sue on all said notes by attachment, charging him with a felony in the affidavit, does not prevent plaintiff's threat of instituting such action or actions from operating as duress upon the defendants. They were only the more humiliated and intimidated because he was guilty and they knew it, and could be compelled to testify in all criminal as well as civil suits which might be brought against him, and thus forced to become the instrument of his and their own and their family's punishment, humiliation and suffering. This is one of the peculiarly powerful circumstances in this case which makes for duress. The case of Davis v. Luster, 64 Mo. 43, holding that there is no duress in such cases, if the relative charged with crime is guilty, was expressly overruled on that point by Hensinger v. Dyer, 147 Mo. 219. See also Section 325 of 13 Corpus Juris, above quoted.

*Notes Forged by Son: Right to Sue Him.*

VI. It is also contended that the answer is insufficient because it does not expressly allege that defendants' will was overcome by anything except the threat to bring the civil suit based upon the forgery and upon the non-due forged notes. As such threats carried with them the terror of exposure and criminal prosecution of the son by the State, we have held they in themselves were sufficient to constitute duress. Besides, as the substantive facts are stated from which duress may arise, the pleading is good without expressly alleging the defendants' will was overcome. [Turley v. Edwards, 18 Mo. App. 689-90.]

*Pleading Coercion.*

VII. We also rule that the defense of the illegality of the note sued on, as being given under an implied agreement not to prosecute said George Begley, Jr., criminally, is well stated in the answer. The answer alleges that "at the time of the signing of said note by these answering defendants, it was mutually understood and impliedly

*Agreement Not to Prosecute.*

agreed by and between the parties thereto at said county and state aforesaid, that in the event defendants would sign the note described in plaintiff's petition, said George Begley, Jr., would not be prosecuted criminally for the crimes of forgery aforesaid, which prosecution at the time was being threatened by the plaintiff, and that no court proceedings would be instituted that would expose the said George Begley, Jr., and humiliate and disgrace these answering defendants, and defendants say that, because of said threats aforesaid, and the understanding and agreement aforesaid, they signed said note, and for no other reason whatsoever.'' In a prior part of the answer is the allegation that plaintiff was ''informed by these defendants . . . that said notes were forgeries.''

It has long been settled in this State that such agreements need not be express, and that it is sufficient if they may be implied from all the evidence, facts and circumstances in the case. [Sumner v. Summers, 54 Mo. 343.; Sprague v. Rooney, 104 Mo. 358; Bell v. Campbell, 123 Mo. 1; Cheltenham Fire-Brick Co. v. Cook, 44 Mo. 29; Baker v. Farris, 61 Mo. 389.; McCoy v. Green, 83 Mo. 632; Janis v. Roentgen, 59 Mo. App. 75; Malone v. Fidelity & Casualty Co., 71 Mo. App. 1; Met. Land Co. v. Manning, 98 Mo. App. 249; Turley v. Edwards, 18 Mo. App. 684.]

VIII. But it is objected that whether or not such agreements would be implied depends on all the facts and circumstances surrounding the transaction which must be set out in the answer, in order to enable the court to see whether such agreement may be implied therefrom. We do not agree to this contention. Agreements are both express and implied. If the agreement is expressed, it would be sufficient to- charge that it was an express agreement, or simply an agreement. And so, if the agreement was implied, it would be sufficient to say that it was impliedly agreed or simply agreed. It would not be necessary to plead all the evidence as to what was said and done to prove the express agreement, if one

was alleged. And it is no more necessary to set out in the pleading the evidence of the implied agreement charged to have been made. In Sumner v. Summers, 54 Mo. 343, above cited, which seems to be a leading case, an instruction to the jury was approved, stating that if the jury believe from the evidence "the obligation sued on was executed by defendants upon an agreement or understanding, either expressed or implied, between said Watson and said defendants, that said Watson would suppress or abandon said prosecution, or abstain from the further prosecution of said charge, then said obligation is void, and the jury must find for the defendant."

We rule this point also against the respondent.

The result is, the judgment below is reversed and the cause remanded for trial and further proceedings according to the views herein expressed. *Ragland, C.,* concurs; *Brown, C.,* not sitting.

PER CURIAM:—The foregoing opinion of SMALL, C., in Division One, is hereby adopted as the opinion of Court in Banc. *Woodson, C. J.,* and *David E. Blair, Ragland, Walker* and *White, JJ.,* concur; *James T. Blair, J.,* concurs in the result; *Graves, J.,* dissents.